**UNITED STATES DISTRICT COURT**
**DISTRICT OF MASSACHUSETTS**

| | | |
|---|---|---|
| ‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾ | ) | |
| **SBT HOLDINGS, LLC, BRIAN T. FOLEY,** | ) | |
| **THOMAS E. FOLEY, and SUSAN B.** | ) | |
| **FOLEY,** | ) | |
| | ) | **Civil Action No.** |
| **Plaintiffs,** | ) | **07-40116-FDS** |
| | ) | |
| **v.** | ) | |
| | ) | |
| **TOWN OF WESTMINSTER,** | ) | |
| **WESTMINSTER CONSERVATION** | ) | |
| **COMMISSION, LOIS LUNIEWICZ,** | ) | |
| **MATTHEW MARRO,** | ) | |
| **KAREN MURPHY, and SEEWALD** | ) | |
| **JANKOWSKI & SPENCER, P.C.,** | ) | |
| | ) | |
| **Defendants.** | ) | |
| ‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾ | ) | |

**MEMORANDUM AND ORDER ON DEFENDANTS' MOTIONS**
**TO DISMISS OR, IN THE ALTERNATIVE, FOR SUMMARY JUDGMENT**

**SAYLOR, J.**

This is an action arising out of a dispute between a land developer and various municipal

entities, officers, and employees.  The dispute involves environmental orders and government-

initiated civil litigation that allegedly improperly delayed development of real property by plaintiff

SBT Holdings, LLC.

The complaint asserts (1) a claim under 42 U.S.C. § 1983 against all defendants; (2) a

claim under the Massachusetts Civil Rights Act, Mass. Gen. Laws ch. 12 §§ 11(H)-(I), against

defendants Lois Luniewicz, Karen Murphy, Matthew Marro, and Seewald, Jankowski & Spencer,

P.C. ("SJS"); (3) a claim for malicious prosecution against defendants the Town of Westminster,

the Westminster Conservation Commission, and SJS; and (4) a claim for abuse of process against

all defendants except Marro.

Defendants Westminster, the Westminster Conservation Commission, Luniewicz, and Murphy have filed a motion to dismiss, or, in the alternative, for summary judgment.  SJS has separately filed a similar motion.  For the reasons set forth below, (1) the Westminster defendants' motion to dismiss will be granted as to Count 1 for failure to state a claim; (2) the motion of SJS to dismiss will be granted on grounds of absolute immunity; and (3) the Court will decline to exercise jurisdiction over the remaining counts.  As to non-moving defendant Marro, Count 1 will be similarly dismissed, and the Court will decline to exercise jurisdiction over the remaining counts.

I.      **Factual Background**

For purposes of a motion to dismiss, the Court will accept all well-pleaded facts in the complaint and will draw all reasonable inferences in plaintiffs' favor.

Plaintiff SBT Holdings, LLC, is a limited liability company.  Plaintiffs Brian T. Foley, Thomas E. Foley, and Susan B. Foley are members and equity owners of the LLC.

Defendant Town of Westminster is a municipality, and defendant Westminster Conservation Commission is a commission established pursuant to Mass. Gen. Laws ch. 40, § 8(c).  Defendant Lois Luniewicz is a member of the Conservation Commission; defendant Matthew Marro is a consultant who performed work for the Commission; and defendant Karen Murphy is the Town Coordinator of Westminster.[1]  Defendant SJS is a law firm based in Amherst, Massachusetts.

---

[1] The Town Coordinator performs administrative tasks for the town on behalf of the Board of Selectmen, the governing authority for the town.

A.     **2003 SBT Land Purchase and Building Permit Application**

On June 27, 2003, SBT purchased a parcel of land located on East Road in Westminster. At the time of purchase, the property was open space, and SBT intended to develop it for residential purposes.

After SBT purchased the property, it prepared a development plan that provided for the construction of three duplex townhouses.  At some unspecified point in the summer of 2003, SBT applied for building permits.

In late August 2003, after its permit application but before the permits had been granted, SBT performed "hay bale installation" on the property.  This was done to minimize erosion that might occur and that might affect nearby wetlands while water and sewer services were being installed.  On September 4, 2003, the Westminster Building Inspector issued three separate building permits for the Property, allowing for the construction of three duplex town-houses.

B.     **Issuance of DEP Order and Conservation Commission Enforcement Order**

In late September, Westminster experienced heavy rain.  Water crested over the double hay-bale lines that SBT had installed on the property.  SBT installed an additional hay-bale line and informed the Commission of the effect of the excessive rainfall.  The Commission inspected the property the next day and asked SBT to install additional hay-bale lines around certain culvert pipes.  SBT complied with this request.

On October 29, the Massachusetts Department of Environmental Protection ("DEP") inspected the property.  Mary Ann DiPinto of the DEP determined that heavy rains had overcome SBT's attempt at erosion control and that downstream wetland areas had accordingly been affected.  On October 31, the DEP issued an order requiring SBT to "take every reasonable step

3

to prevent further violation of the [Massachusetts] Wetland Protection Act and Clean Waters

Act." The Order required SBT to develop a plan for restoration of impacted wetlands areas.

On November 1, two members of the Westminster Conservation Commission made an

unannounced visit to the property. During that visit, the Commission agents requested that SBT

install retaining walls in specific locations on the property, to be constructed before water,

electric, and sewer lines were installed. One agent stated that he would issue an oral cease-and-

desist order if the Commission's request was not met. SBT postponed utility construction as a

result.

On November 25, the Conservation Commission issued an Enforcement Order against

SBT. The Enforcement Order alleged violation of the Massachusetts Wetland Protections Act,

Mass. Gen. Laws ch. 131 § 40. The Enforcement Order required SBT to take certain actions to

prevent further violations of the Wetlands Protection Act. Plaintiffs contend that at the time the

Commission issued the Enforcement Order, the Commission was aware that the property was

already subject to the DEP Order.

C.     **The DEP Consent Order and May 2004 Commission Inspection**

In December 2003, plaintiffs met with the DEP and discussed the violations alleged by the

DEP in the October 31 Order. The DEP raised no substantial objections to SBT's proposed

response, and in March 2004 the parties entered into an Administrative Consent Order. The DEP

Consent Order stated that compliance with the terms of the order would adequately address the

alleged violations of the Wetlands Protection Act.

In May 2004, consultant Marro inspected the property. Marro recommended that SBT

add an additional silt fence and drainage swale. He also recommended that SBT remove the

4

existing hay-bale lines on the property and replace them with new hay-bale lines.  Plaintiff Brian

Foley told Marro that complying with the hay-bale recommendation would violate the DEP

Consent Order.  According to plaintiffs, Marro and the Commission knew that compliance with

the request would violate the Consent Order.

SBT informed the DEP of the Commission's request.  The DEP agreed that the hay-bale

replacement recommendation would cause more damage to the downstream wetlands area.  SBT

then constructed a silt fence and drainage swale, but did not install new hay bales.

### D.   August 25, 2004 Enforcement Order and September 2004 Hearings

On August 25, 2004, the Commission issued to SBT a second Enforcement Order that

also included a cease-and-desist order.  The Order directed SBT to ". . . immediately cease and

desist from the [*sic*] further activity affecting the Buffer Zone and/or wetland resource areas on

the [property]."

On September 8, Brian Foley attended a Conservation Commission hearing on the subject

of the second Enforcement Order.  According to plaintiffs, the hearing was supposed to be

"closed," but was attended by approximately fifty area residents and three reporters.

The hearing was contentious.  According to plaintiffs, defendants Marro and Luniewicz

used the hearing to criticize them on a variety of matters not related to enforcement of the

Wetlands Protection Act or the second Enforcement Order.  Area residents also criticized the

plaintiffs on unrelated issues.[2]  The Commission ultimately required plaintiffs to file a Notice of

Intent as to Affected Abutters' Property, and continued the hearing until September 29.

---

[2]  For reasons that are not clear, plaintiffs allege that the comments from area residents violated their due process rights.

Plaintiffs filed the Notice in advance of the September 29 hearing.  Between the September 8 and September 29 hearings, the property again experienced rain on three separate occasions, the last of which occurred on September 27.  Each event adversely affected hydroseeding and site stabilization work that SBT had been performing on the property.  Plaintiffs attempted site restoration after the first two rain events, but was interrupted by the September 27 rain.

At the September 29 hearing, Glenn Krevosky, an environmental consultant to SBT, stated that the property remained stable with regard to soil erosion, and stated that the only additional stabilizing factor needed was time for grass to grow back.  According to plaintiffs, the Commission did not challenge Krevosky's conclusions.  At the conclusion of the hearing, Luniewicz ordered plaintiffs to file another Notice of Intent, covering the entire property and the three buildings that had already been erected and stabilized.  Luniewicz stated that this Notice of Intent had to be filed by 1:00 p.m. the next day, giving plaintiffs less than 18 hours to comply.  Plaintiffs indicated that a second notice was not necessary, and that they could not comply with the order in a timely manner.

**E.    September 30, 2004 Enforcement Order**

Plaintiffs apparently did not file another Notice of Intent, and had no contact with the Commission between September 29 and October 4.  On October 4, SBT learned through a local newspaper article that the Commission had issued a further Enforcement Order against the property on September 30.  The Order required SBT to completely cease and desist any further development on the property.

The Commission's issuance of the September 30 Order was a substantial setback for the

plaintiffs.  SBT's lender for construction of the townhouses cut off all funding for the project.

Subcontractors, after learning of the newspaper article, refused to do any additional work.  As a

result, Brian, Thomas, and Susan Foley devoted substantial personal funds to the project and were

forced to replace many subcontractors.

       **F.**      **Permanent Injunction Litigation**

      In November 2004, DEP representatives visited the property and determined that the site

was stable and acceptable to DEP.  In December 2004, the DEP again visited the property, and

was accompanied by Marro on behalf of the Commission.  According to plaintiffs, DEP

representatives declared, in the presence of Marro, that the site was stable and acceptable to DEP.

Plaintiffs also contend that Marro, at the time of the visit, acknowledged that all environmental

aspects of the property were stable and acceptable.

      Plaintiffs had no further communication with the Commission in December 2004 or

January 2005.  On February 1, the Commission filed suit against SBT in Worcester Superior

Court.  The suit was filed on behalf of the Commission by the law firm of Seewald, Jankowski &

Spencer ("SJS").  The complaint alleged violation of the Wetlands Protection Act and failures to

comply with the Commission's orders.  The Commission sought a permanent injunction against

prohibiting plaintiffs from performing work on the property until such time as SBT complied with

the orders of the Commission.

      The Superior Court issued a temporary restraining order against SBT on February 9.  The

scope of the TRO was more limited than that requested by the Commission, and required that

SBT not cause any damage to the environment as defined under the Wetlands Protection Act.  On

February 24, the Superior Court took the issue of the renewal of the TRO under advisement.

SBT continued to have difficulty securing funding and subcontractors for work on the property, and was unable either to finish construction or sell the property in 2005. In early March 2006, after deliberating for more than a year, the Superior Court entered a preliminary injunction against SBT, incorporating the terms of the February 2005 TRO.

On March 17, 2006, SBT filed a motion to dismiss the litigation. The motion was denied without prejudice on technical grounds and re-filed by SBT on April 13. The Worcester Superior Court scheduled a hearing on the motion for May 3.

### G.      Building Permit and Murphy E-Mails

On April 13, 2006, the Town of Westminster issued a Certificate of Use and Occupancy for a two-family condominium located on the Property. At the time, SBT had contracts to sell that unit and obtaining the occupancy permit was a pre-condition to closing on the sale. According to plaintiffs, however, defendant Murphy, the Town Coordinator, took the permit and withheld it until after the scheduled closing date for the sale of the property.

### H.      SBT's Motion to Dismiss

On May 2, a DEP official informed plaintiffs that it believed that the conditions of the Administrative Consent Order of March 15, 2004, had been fully and timely complied with. The DEP further indicated a willingness to issue a "Certificate of Compliance" for the property. That certificate was issued on May 30, and stated that the property was in compliance with applicable environmental regulations.

On May 3, SBT's motion to dismiss was heard by the Worcester Superior Court. A further hearing on the same motion was held on June 21. At the end of that hearing, the court granted SBT's motion to dismiss the litigation. The court stated:

8

> Once the DEP issued its first order on October 31, 2003, the Commissioner was
> on notice that the remediation of SBT's violations at [the property] were subject to
> the DEP's jurisdiction.  Nevertheless, the Commission continued to impose
> additional conditions on SBT while SBT was working successfully with the DEP
> pursuant to a consent order.  I find the fact that the Commission attached the
> DEP's Consent Order to its complaint to be evidence of the frivolous and wholly
> insubstantial nature of the Commission's claim against SBT.

The court also awarded costs and attorneys' fees to SBT.

On March 14, 2007, the Massachusetts Appeals Court affirmed the decision.  In its written opinion, the Appeals Court stated that "the judge's findings support the reasonable inference that the complaint was not filed in good faith and was based on claims that were wholly insubstantial and frivolous."

### I.      The Luniewicz E-Mail

In the course of the litigation in the Superior Court, SBT obtained copies of e-mail correspondence among the various defendants.  According to plaintiffs, those e-mails show that on March 2, 2006, SJS advised Luniewicz, Murphy, and Marro that the Superior Court had issued a preliminary injunction continuing the terms of the previous temporary restraining order against SBT.  Luniewicz sent the following e-mail response to SJS, Murphy, and Marro:  "Hi Kristi.  I'd say—good job!  We've heard that Mr. Foley is financially insolvent and no longer connected to the project, *which is why we started this process in the first place*!" (emphasis added).

According to plaintiffs, SJS continued to discuss the lawsuit with Marro, Murphy, and Luniewicz in a series of e-mails between March and June 2006.  SJS repeatedly advised those defendants that the DEP was satisfied with the environmental condition of the property and that it was SJS's inclination to dismiss the lawsuit voluntarily.

J.       **October 6, 2004 Litigation**

Although not referenced in the complaint, SBT filed a separate suit in Worcester Superior Court on October 6, 2004.  The Town of Westminster, Luniewicz, and Marro were named as defendants in that case.[3]  The complaint alleged interference with contractual relations, interference with use and enjoyment of personal property, abuse of process, trespass, and interference with prospective business relations.  (Def. Ex. 1).

On March 16, 2005, the Superior Court issued an "Order for Entry of Dismissal Nisi" in which it ordered that an agreement for judgment or stipulation of dismissal be filed by April 16, 2005.  The order reported that the parties had settled the case.  The parties did not file anything by the April 16 deadline, and the court accordingly entered a judgment dismissing the litigation *without* prejudice on May 18.  (Pl. Ex. 2).  On that very same day, the parties filed a joint stipulation of dismissal *with* prejudice.  (Def. Ex. 11).  On the docket, the stipulation was recorded after the court's dismissal.

On July 26, 2007, a further entry was made to the docket, stating as follows: "JUDGMENT VACATED—stipulation of dismissal having been filed 5/18/07"  (Pl. Ex. A).[4]  In early August 2007, SBT filed a motion to correct the docket entry or, in the alternative, to amend the judgment.  That motion was apparently granted in September or October 2007.

On November 1, 2007, the common defendants to the October 6, 2004 litigation and the present case filed a motion to vacate the judgment of dismissal and substitute a stipulation of

---

[3]  The October 6, 2004 suit also named multiple other persons and entities as defendants, including members of the Conservation Commission and abutters to the property.

[4]  The reference to "5/18/07" was apparently a clerical error, and in all probability referred to the judgment entered on May 18, 2005.

dismissal with prejudice.  The court, however, denied that motion on December 8, stating:

> Upon consideration of the arguments of the parties and this motion record, [there] remains a genuine issue of fact as to whether all parties especially the plaintiff and plaintiff's counsel of record, intended to have this case disposed of by a dismissal with prejudice and consequently, upon this motion record, I am compelled to DENY this motion.

(Pl. Ex. A).

Plaintiffs brought this action in April 2007, before the Superior Court litigation was resolved.

## II.     Analysis

To survive a motion to dismiss under Fed. R. Civ. P. 12(b)(6), the factual allegations in a complaint must "possess enough heft" to set forth "a plausible entitlement to relief." *Gagliardi v. Sullivan,* 513 F.3d 301, 305 (1st Cir. 2008) (*quoting Bell Atl. Corp. v. Twombly*, - - - U.S. - - - , 127 S. Ct. 1955, 1966 (2007)).  Dismissal is appropriate if the complaint fails to set forth "factual allegations, either direct or inferential, respecting each material element necessary to sustain recovery under some actionable legal theory."  *Gagliardi*, 513 F.3d at 305 (*quoting Centro Medico del Turabo, Inc., v. Feliciano de Melecio*, 406 F.3d 1, 6 (1st Cir. 2005)).

### A.     Section 1983 Claim

Count 1 asserts a claim under 42 U.S.C. § 1983, alleging that defendants violated plaintiffs' right to equal protection under the United States Constitution.  For purposes of surviving a motion to dismiss, a plaintiff can establish a plausible Section 1983 equal protection violation by showing he was treated differently from "others similarly situated . . . based on impermissible considerations such as race, religion, intent to inhibit or punish the exercise of constitutional rights, or malicious or bad faith intent to injure a person."  *Clark v. Boscher*, 514

F.3d 107, 114 (1st Cir. 2008) (quoting *Barrington Cove Ltd. P'Ship v. R.I. Hous. And Mortgage Fin. Corp.*, 246 F.3d 1, 7 (1st Cir. 2001)).  Two entities are "similarly situated" if "a prudent person, looking objectively at the incidents [complained of], would think them roughly equivalent and the protagonists similarly situated . . . in all relevant respects."  *Boscher*, 514 F.3d at 114 (internal quotation omitted).  The allegations in the complaint here fail to meet this standard.

The *Barrington Cove* and *Boscher* courts both considered equal protection claims made by land developers who had allegedly suffered adverse regulatory decisions.  *See Barrington Cove*, 246 F.3d at 3-4; *Boscher*, 514 F.3d at 110-112.  Nonetheless, in both cases, plaintiffs identified allegedly similar third parties who had been treated differently.  In both cases, the court upheld dismissal for failure to state a claim on the grounds that the complaint did not adequately allege that the identified third parties were similarly situated.  *See Barrington Cove*, 246 F.3d at 8-9 (plaintiff required not only to allege the existence of third parties differently treated, but also to allege sufficient facts showing those third parties were actually similarly situated), *Boscher*; 514 F.3d at 113-114 (other entities identified by the plaintiff, such as a private subdivision and an industrial park, differed significantly in nature from plaintiff's proposed subdivision and thus were not similarly situated); *see also Rubinovitz v. Rogato*, 60 F.3d 906, 910 (1st Cir. 1995).

By contrast, plaintiffs in this case do nothing more than make the bare assertion that the defendants "did not take did not take [the complained-of] adverse action again others similarly situated."  Complt. at ¶ 154.  Plaintiffs do not specify who these "others" were, and do not describe any other possible candidates in the complaint.[5]  Given plaintiffs' failure to establish even

---

[5]   The only possible reference in the complaint to a "similarly situated" third party is the following: "Significantly, the Defendant Conservation Commission has never taken any action against the owners of [the] Property who purchased it from plaintiff SBT."  Complt. at ¶ 143.

12

the most basic element of an equal protection claim, the Court need not consider whether the

defendants' actions were taken with "malicious or bad faith intent."  *See, e.g., Barrington Cove*,

246 F.3d at 10 ("Although the failure to allege that its coapplicants were 'similarly situated'

suffices to dispose of [plaintiff's] appeal, we note that [plaintiff's] factual allegations regarding

[defendant's] 'bad faith' were inadequate as well . . .").  Defendants' motion to dismiss Count 1

will be granted.

### B.      State Law Claims

#### 1.      State Claims Generally

The remaining claims allege violations of Massachusetts law.  As a general principle, when

a plaintiff's federal claims are dismissed at the early stages of a suit, the court should consider

carefully whether to exercise its supplemental jurisdiction over any state law claims.  *See, e.g.*,

*Rodriguez v. Doral Mortg. Corp.*, 57 F.3d 1168, 1177 (1st Cir. 1995) (citing *United Mine*

*Workers v. Gibbs*, 383 U.S. 715, 726 (1966)).  The dismissal of the federal claim does not "divest

the district court of power to exercise supplemental jurisdiction but, rather, sets the stage for an

exercise of the court's informed discretion."  *Soto v. Bzdel*, 214 F. Supp. 2d 69, 77 (D. Mass.

2002) (quoting *Roche v. John Hancock Mut. Life Ins. Co.*, 81 F.3d 249, 256-257 (1st Cir.

---

The reference to the purchasers of the property is not explained.  Plaintiffs allege that they were scheduled to sell a *portion* of the property—a two-family condominium—on April 13, 2006.  Complt. at ¶ 108.  However, plaintiffs did not have the required Certificate of Use and Occupancy on that date, and the complaint does not reveal whether plaintiffs later sold the condominium, or any other portion of the property.  Furthermore, plaintiffs do not allege that the environmental condition of the property remained unchanged (for example, as to the quality of the soil or the frequency of damaging weather events), or that the new owners did not undertake site restoration.

That allegation is not sufficient to state an equal protection claim.  Mere identification of an allegedly "similarly situated" third party is not enough to avoid dismissal; plaintiffs must allege sufficient facts to show that the property's new owner was similarly situated in *relevant* respects.  *See Barrington Cove*, 246 F.3d at 9; *Boscher*, 514 F.3d at 114; *Rubinowitz*, 60 F.3d at 910; *compare Cordi-Allen v. Conlon*, 494 F.3d 245, 253 (1st Cir. 2007) (temporal disparities weaken the inference that two parties are "similarly situated").

1996)); *see also* 28 U.S.C. § 1367(c)(3) (allowing court to "decline to exercise supplemental jurisdiction over [pendent state] claims[s] . . . [if the] court has dismissed all claims over which it has original jurisdiction").  The decision whether to exercise jurisdiction lies within the broad discretion of the court.  *Vera-Lozano v. Int'l Broadcasting*, 50 F.3d 67, 70 (1st Cir. 1995).

This case is at a very early stage; among other things, discovery has not yet commenced.  Moreover, this case essentially involves a local dispute under state and local laws.  The Court concludes that with one exception, noted below, concerns of "comity, judicial economy, convenience, fairness and the like" disfavor the exercise of supplemental jurisdiction here.  *Roche*, 81 F.3d at 257; *see also Gibbs*, 383 U.S. at 726 ("[n]eedless decisions of state law should be avoided both as a matter of comity and to promote justice between the parties, by procuring for them a surer-footed reading of the applicable law").  Accordingly, as to the Town of Westminster, the Westminster Conservation Commission, Lois Luniewicz, and Karen Murphy, the Court will decline to exercise § 1367 supplemental jurisdiction.  Counts 2, 3, and 4 will be dismissed as to those defendants without prejudice.

### 2.   Absolute Immunity of SJS

SJS contends that it is entitled to absolute immunity from suit.  Claims of absolute immunity must be "resolved at the earliest possible stage of litigation."  *Anderson v. Creighton*, 483 U.S. 635, 646 n. 6 (1987).  For that reason, the Court will retain jurisdiction over the claims against SJS to the extent necessary to decide the absolute immunity issue.

Government officials subject to suit are normally shielded from liability from civil damages only when their actions "do not violate clearly established statutory or constitutional rights of which a reasonable person would have known."  *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982).

14

In contrast to this "qualified immunity," a narrow class of government officials enjoy absolute immunity from suit.  This doctrine, when applicable, provides a complete bar to civil liability for all damages, regardless of the culpability of the actor.  *See Acevedo-Cordero v. Cordero-Santiago*, 958 F.2d 20, 22 (1st Cir. 1992).

Prosecutors enjoyed absolute immunity at common law for claims against them arising out of an indictment or prosecution.  That immunity also applies to state prosecutors sued under 18 U.S.C. § 1983.  *Imbler v. Pachtman*, 424 U.S. 409, 427 (1976).  The immunity also extends to government officials who exercise discretion to initiate and continue the prosecution of a civil or administrative matter and to government lawyers who represent the agency in such a matter.  *Butz v. Economou*, 438 U.S. 478, 515-17 (1978).  Such immunity applies to state and local officials performing similar actions.  *See Crawford-El v. Britton*, 523 U.S. 574, 585 (1998); *see also Figueroa-Serrano v. Ramos-Alverio*, 221 F.3d 1, 4 (1st Cir. 2000) (absolute immunity extends to state legislators), *Reed v. Village of Shorewood*, 704 F.2d 943, 953-954 (7th Cir. 1983) (absolute immunity extends to municipal liquor license commissioner).

At all relevant times, attorney Alan Seewald of SJS was Westminster's Town Counsel.  The position of Town Counsel was created by municipal statute, and the person holding that office is appointed on a year-by-year basis.  *Code of Town of Westminster*, § 22-1.  The duties of the Town Counsel, set forth in § 22-2 of the Code, include:

> [the duty] to conduct the prosecution or defense of claims, actions and proceeding to which the town is a party and the prosecution of actions or proceedings by or on behalf of any town officer, board, commission or committee . . . .

*Id*.  Plaintiffs agree that absolute immunity extends to government attorneys employed *directly* by a municipal government in connection with civil proceedings prosecuted on behalf of a municipal

government.  Plaintiffs, however, characterize SJS as a "contract law firm" that happens to have a

municipality as one of its clients, and argue that it is therefore not entitled to absolute immunity.

It is true that absolute immunity is "rare and exceptional," *Cleavinger v. Saxner*, 474 U.S.

193, 202 (1985), and that "[o]fficials who seek absolute immunity must squarely shoulder the

burden of showing that public policy *demands* an exception of that scope." *Bettencourt v. Board*

*of Registration in Medicine of Massachusetts*, 904 F.2d 772, 784 & n.15 (1st Cir. 1990)

(emphasis added); *accord Dinsdale v. Com.*, 424 Mass. 176, 180 (1997).  However, the fact that

attorney Seewald was town counsel on a contract basis does not vitiate his absolute immunity.  In

the few instances the courts have denied absolute immunity to a private attorney ostensibly acting

on behalf of a government agency, the lawyers involved held no actual public office.  *See, e.g.,*

*Cooper v. Parrish*, 203 F.3d 937, 950-951 (6th Cir. 2000) (assistant district attorney was not

properly appointed and therefore could not assert absolute immunity); *see also Gonzalez v.*

*Spencer*, 336 F.3d 832, 834-835 (9th Cir. 2003) (holding that a private attorney "acting as a

public prosecutor" was hired by the court as a contract service provider and therefore was not

entitled to immunity).[6]

As the Supreme Court recognized in *Butz*, "[plaintiffs] targeted by an administrative

proceeding will react angrily and may seek vengeance in the courts."  *Butz*, 438 U.S. at 515; see

also *Dinsdale*, 424 Mass. at 180-181 ("conducting civil litigation on behalf of the government

poses obvious risks of entanglement of such attorneys in vexatious and burdensome litigation by

---

[6] For absolute immunity to apply, the complained-of conduct must closely relate to the judicial process, or the lawyer's role as an advocate.  *See, e.g., Chicopee Lions Club v. District Atty. for Hampden Dist.*, 396 Mass. 244, 248-249 (1985).  Here, even fully crediting plaintiffs' allegations, all of the claims against SJS concern the initiation and continuation of the litigation in Superior Court.

16

disgruntled litigants"). The danger of subjecting government attorneys to suit "applies with particular force in local government, where prestige and pecuniary rewards may pale in comparison to the threat of civil liability." *Figueroa-Serrano*, 221 F.3d at 4 (quoting *Bogan v. Scott-Harris*, 523 U.S. 44, 45 (1998)).

Local regulatory disputes are often extremely heated and can provoke sharp community debate. The citizens and officials involved in such disputes may know each other personally, and there is a great risk that grudges or petty feuds may arise. Lawyers holding public office and charged with upholding municipal regulations must sometimes defend, initiate, or continue litigation related to such controversial and emotional situations. Anything less than absolute immunity for claims against counsel arising out of municipal prosecution of civil litigation would be likely to chill an attorney's advocacy at every step of the legal process. *See Butz*, 438 U.S. at 516-517 ("If agency attorneys were held personally liable in damages as guarantors of the quality of their evidence, they might hesitate to bring forward some witnesses or documents . . ."). The reasons enunciated by the Supreme Court in *Butz* to afford absolute immunity to public lawyers prosecuting civil litigation apply with equal force here. *Id*. at 515-517; *accord Chicopee Lions Club*, 396 Mass. at 251 (scope of prosecutorial immunity under Massachusetts law at least as broad as under § 1983).

Accordingly, attorney Seewald, and therefore his law firm SJS, is entitled to absolute immunity.[7] The Court expresses no substantive opinion on the actions and motivations that plaintiffs ascribe to SJS. Government attorneys who engage in alleged inappropriate conduct may

_____

[7] Attorney Seewald is not a defendant in this action. The absolute immunity flowing from Seewald's official position, however, applies equally to SJS. Absolute immunity would be largely illusory if a public lawyer's immunity could be circumvented simply by naming the lawyer's firm.

be subject to sanctions in the underlying case, contempt, or bar disciplinary proceedings.  But the scope of absolute immunity turns on the quasi-judicial nature of the complained-of conduct, not the alleged impropriety of the conduct itself.  SJS's motion to dismiss will be granted.[8]

### B.   Marro Dismissal

Defendant Marro has not joined in either motion to dismiss, even though the foregoing discussion applies with equal force to his claims.  In appropriate circumstances, however, this Court may dismiss claims *sua sponte*.  *See Daley v. Twin Disc., Inc.*, 440 F. Supp. 2d 48, 54 (D. Mass. 2006) (citing *Diaz v. Stathis*, 440 F. Supp. 634, 637 (D. Mass. 1977), *aff'd* 576 F.2d 9 (1st Cir. 1978)).  In particular, "where presented with a motion to dismiss filed by some of the defendants of an action, the court . . . may consider the sufficiency of the complaint as against all defendants."  *Diaz*, 440 F. Supp. at 637.  Plaintiffs have received adequate notice of and an opportunity to respond to both motions and will suffer no prejudice from the dismissal.  *Id.*  Accordingly, Count 1 will be dismissed as to defendant Marro.

### III.   Conclusion

For the foregoing reasons, the motion of defendant Seewald, Jankowski & Spencer, P.C., to dismiss is GRANTED.  The motion of defendants Town of Westminster, Westminster Conservation Commission, Lois Luniewicz, and Karen Murphy to dismiss is GRANTED in part.  Count 1 will be dismissed as to all defendants, including defendant Marro.  The Court declines to exercise supplemental jurisdiction over Counts 2, 3, and 4, and those claims are accordingly

---

[8] Defendants assert a variety of defenses to the remaining state law claims, including claim preclusion, qualified immunity, and lack of standing on the part of plaintiffs.  Furthermore, a cursory review of the complaint suggests other possibilities, such as sovereign immunity.  *See, e.g.*, Mass. Gen. Laws ch. 258, § 10(c); *Petricca v. City of Gardner*, 194 F. Supp. 2d 1, 5 (D. Mass. 2002).  The Court expresses no opinion as to the validity or applicability of any of these contentions.

dismissed without prejudice to their renewal in a state court of appropriate jurisdiction.

**So Ordered.**

    /s/ F. Dennis Saylor
F. Dennis Saylor IV
United States District Judge

Dated:  March 25, 2008